460 So.2d 681 (1984)
Johnny McCLAIN
v.
C.E. HOLMES, Ken Netterville and Cavelle Bradley.
No. CA 83 1284.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
Rehearing Denied December 28, 1984.
Writ Denied February 15, 1985.
Dennis R. Whalen, Baton Rouge, for plaintiff-appellee.
Mary H. Thompson, Baton Rouge, for defendant-appellee.
Steve M. Marks and Elmo Lear, Baton Rouge, for defendant-appellant.
*682 Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
The issue in this case is whether or not the trial court acted properly in granting a judgment notwithstanding the verdict. By so doing, the trial court nullified the jury's conclusion an employee involved in an altercation with police officers was acting within the course and scope of his employment, thus rendering his employer liable for the injuries he caused.
On September 28, 1979 an accident occurred at the intersection of Airline Highway and Victoria Drive in Baton Rouge. The intersection was blocked by the wrecked vehicles and Baton Rouge city police officers were diverting traffic away from the intersection. A van owned by C. Henry Company, Inc. and driven by its employee, Johnny McClain, attempted to enter the intersection from the unimproved right-of-way adjacent to Airline Highway, opposite Victoria Drive, in spite of Officer C.E. Holmes' instructions not to do so.
As a result of McClain's disobeying the officer's directions, another officer working the accident, Ken Netterville, told McClain to pull over to the shoulder and informed McClain he was going to issue a citation as soon as the traffic cleared. All further facts concerning the subsequent events were disputed at trial; however, it was established that a disagreement arose between Mr. McClain and the police officers as to the propriety of Mr. McClain receiving a citation. A scuffle followed, involving the two officers mentioned above, as well as a third, Officer Cavelle Bradley. As a result, Mr. McClain was arrested and taken to the downtown jail. He was later convicted of resisting a lawful arrest.
Mr. McClain filed suit against the three police officers, alleging he was entitled to damages for their "malicious conduct." The three officers reconvened, seeking damages for injuries sustained in the altercation. McClain's employer, C. Henry Company, Inc., and its insurer, Reliance Insurance Company, were added as defendants in the reconventional demand. (See La.Civ.Code art. 2320 which states that employers are answerable for the damage caused by their "servants" in the exercise of the functions in which they are employed.)
A jury trial was held and the jury returned a verdict on the main demand in favor of the three defendant police officers. On the reconventional demand the jury found against Johnny McClain and in favor of one of the police officers, Ken Netterville, awarding him $30,000. The jury, finding the battery had been committed by Mr. McClain while he was within the scope and course of his employment, also rendered a verdict against C. Henry and its insurer.
C. Henry filed a motion for a judgment notwithstanding the verdict, or in the alternative, a motion for a new trial or for a remittitur. The basis for the motions was that the jury's conclusion the tort was committed while McClain was within the scope and course of his employment was contrary to the law and evidence. The court granted the motion and rendered judgment in favor of C. Henry and its insurer.[1] Ken Netterville filed this devolutive appeal.
The standard for determining the propriety of a judgment notwithstanding the verdict is the same as that used in determining the correctness of a directed verdict. See Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3d Cir.1983), writ denied 437 So.2d 1149 (1983). The trial court recognized this to be the case when it noted the directed verdict (like the judgment notwithstanding the verdict) should be granted, "... only if reasonable men, all inferences resolved in favor of the nomover, (sic) could not possibly arrive at a verdict for the nonmover." The Rougeau court quoted language from Boeing Company *683 v. Shipman, 411 F.2d 365 (5th Cir. 1969), as follows:
"`On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence [opposed to the motions, that is, evidence][2] of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.'" 432 So.2d at 1166.
The Rougeau court noted in applying this standard, the court cannot consider credibility issues or substitute its judgment of the facts for that of the jury. The issue of the liability of McClain and the policeman involved many credibility determinations and factual disputes. The aspect of the case that concerns us here is whether or not Mr. McClain was within the course and scope of his employment.
The leading case involving an employer's liability for an intentional tort of the employee is LeBrane v. Lewis, 292 So.2d 216 (La.1974). There a dispute arose between Lewis, a kitchen supervisor at a hotel, and LeBrane, a kitchen helper. The argument developed when LeBrane refused to leave and get his hair cut in compliance with the hotel policy concerning kitchen workers. When LeBrane refused to comply with this directive, Lewis fired him (as he was authorized to do). A heated argument developed and the two men commenced fighting. In the course of the fracas Lewis stabbed LeBrane and LeBrane later sued Lewis and his employer, the corporate owner of the hotel.
The intermediate court had concluded that at the time of the stabbing, the dispute was a purely personal matter. The Supreme Court reversed, deciding the dispute was primarily "employment-rooted" and that, "The fight was reasonably incidental to the performance of the supervisor's duties in connection with firing the recalcitrant employee...." The court elaborated as follows:
"In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. It can thus be regarded as within the scope of the supervisor's employment, so that his employer is liable in tort to third persons injured thereby." 292 So.2d at 218.
Subsequent cases from this circuit have dealt with situations similar to that of LeBrane. In Faust v. Mendoza, 415 So.2d 371 (La.App. 1st Cir.1982), a security guard at a hotel was alleged to have committed a battery upon a customer. The court found the dispute had erupted as a result of the customer's apparent drunken and disorderly conduct. Since the security guard had been hired to keep order on the premises, the altercation that resulted was obviously employment-rooted so as to be regarded as a risk of harm "fairly attributable to the employer's business."
In Fogg v. Lott, 444 So.2d 177 (La.App. 1st Cir.1983), an altercation occurred when the doorman at a bar refused to allow a customer to enter the premises because the customer was not dressed properly. Again the court concluded the dispute was primarily employment-rooted and the employer should be liable.
In Cappo v. Vinson Guard Service, Inc., 400 So.2d 1148 (La.App. 1st Cir.1981), a security guard was employed by a restaurant to prevent nonpatrons from parking in *684 the restaurant parking lot. The plaintiff insisted he should be allowed to park his car there although he did not intend to visit the restaurant. An argument occurred and the security guard struck the plaintiff. The court found the restaurant was liable as the special employer of the guard because the battery was committed while the guard was attempting to enforce the restaurant's regulations.
In Scott v. Commercial Union Ins. Co., 415 So.2d 327 (La.App. 2d Cir.1982), the employee, a mechanic, struck a customer as they discussed a personal matter. The court found no liability on the part of the employer, because although the tort was committed at the employer's place of business and during the working hours, the dispute was strictly personal in nature and did not arise out of the employment.
With these cases in mind, we agree with the trial court reasonable minds could arrive at no other conclusion than that the tort committed by McClain was not employment-related. Although the action occurred during working hours and while Mr. McClain was en route to make deliveries, the dispute was caused by personal animosity rather than by any matter related to the employer's interest. At the moment of the battery, Mr. McClain, unlike the employees in LeBrane, Faust, Fogg and Cappo, was not acting in furtherance of his employer's interest. The dispute was in no way connected to Mr. McClain's duties as a truck driver. Rather, like the employee in Scott, his conduct was motivated by "purely personal considerations entirely extraneous to the employer's interest," (quoting LeBrane, supra,) even though the incident occurred while the employee was working.
Considering the matter from another perspective, in all of the above-cited cases (except Scott) the tort the employee committed was one that could be regarded as described in LeBrane, a "risk of harm fairly attributable to the employer's business." A kitchen supervisor may foreseeably become involved in a dispute with a recalcitrant underling. It is quite foreseeable security guards and doormen may fight with unruly patrons. But the possibility a van driver will ignore the orders of a policeman, become irritated when the policeman issues a citation and, finally, commit a battery upon the policeman while resisting a lawful arrest, is simply not a risk fairly attributable to the employer's business.[3]
In his brief, appellant contends the scuffle could have been employment-related in several aspects. McClain may have disobeyed the police officer's orders not to proceed through the intersection because he was in a hurry to complete his deliveries. McClain may have become agitated when the officer began to issue the citation because he was anxious to complete the deliveries. He may have become inflamed because he feared his job would be in jeopardy if he was issued a citation.
We have carefully examined the record and find not one shred of evidence to support these contentions. When questioned as to whether or not he had been in a hurry to complete his deliveries, Mr. McClain testified, "No, sir." When asked if he would have been delayed by turning in the direction the officer had told him to go he answered, "No, sir. I could have got in the right lane and proceeded on through." When asked if he was concerned about losing his job if he had gotten the citation, he stated he was not concerned about that. In short, there was simply no evidence the tortious conduct was motivated by any reasons related to Mr. McClain's employment. We believe reasonable men can not arrive at any conclusion other than the dispute arose because of purely personal reasons.
For these reasons, the action of the trial court granting the judgment notwithstanding the verdict is affirmed. Appellant is cast for the costs of this appeal.
AFFIRMED.
NOTES
[1] The court also granted (conditionally) the motion for a new trial, as authorized by Code of Civ.P. art. 1810.1(D) as it existed at the time of this trial. This article was repealed in 1983 and is now reembodied in art. 1811.
[2] The bracketed words were deleted from the quotation in Rougeau.
[3] C. Henry is a wholesale paper company supplying items to fast-food restaurants.