WALTER J. ROTHSCHILD, Judge.
This is an appeal from a jury verdict rendered in favor of plaintiff James R. Payne, Sr. and against Tonti Realty Corporation. For the reasons which follow, we reverse the verdict of the jury and render judgment in favor of defendant.

Facts and Procedural History

This case arises from an incident that occurred on September 1, 1994 on the premises of Sunlake Apartments in Ken-ner. On this date, plaintiff, James R. Payne was employed by Tonti Realty Corporation, the manager of the apartment complex. As Payne was walking across the parking lot on his way to the break room, he was struck by a golf cart driven by a co-employee, Julie Green. As a result of injuries sustained in the collision, Payne received worker’s compensation benefits from his employer’s insurer, Guarantee Mutual Insurance Company. Subsequently, Payne filed this tort suit for damages against Tonti and Ms. Green alleging that Ms. Green’s act in striking him with the golf cart was intentional.
RThe matter proceeded to a jury trial on November 27-28, 2000, wherein the jury returned a verdict in favor of defendants, finding that Ms. Green did not commit an intentional act and that plaintiff was therefore limited to the exclusive provisions of the Louisiana Worker’s Compensation Act. The trial court signed a judgment dismissing plaintiffs petition on January 4, 2001. Plaintiff appealed from this judgment, and this Court in an unpublished opinion reversed the judgment on the basis that the trial court erred in the admission of evidence. The matter was remanded for a new trial. Payne v. Tonti, 01-923 (La. App. 5 Cir. 12/26/01, 810 So.2d 587), writ denied, 02-320 (La.4/12/02), 813 So.2d 409.
On September 4, 2002, plaintiff dismissed his claims against Julie Green with prejudice. The second jury trial in this matter commenced on September 8, 2003 solely against Tonti Realty Corporation. Following trial, the jury returned a verdict finding that Julie Green committed an intentional tort by striking plaintiff with the golf cart and that Ms. Green’s actions caused plaintiffs injuries. On October 20, 2003, the trial court rendered judgment in accordance with the jury verdict in favor of James R. Payne, Sr. and against Tonti Realty Corporation in the sum of $514,959.75. Tonti now appeals from this judgment on the basis of several assignments of error.

Vicarious Liability based on theory of Respondeat Superior

Tonti’s first argument on appeal is that the trial court erred in failing to properly instruct the jury on the law regarding vicarious liability based on the theory of respondeat superior. In response to this argument, plaintiff contends that there *1093 was no need for the trial court to give such a charge to the jury, because the issue of vicarious liability had been established as a Lmatter of law in defendant’s responses to plaintiffs request for admissions introduced into evidence.
Prior to the first trial in this matter, plaintiff propounded a request for admission of facts on defendant which included the following two statements of fact: 1) On September 1, 1994, at the time of the incident sued upon, Julie Green was employed by Tonti Realty Corporation, and 2) On September 1, 1994, at the time of the incident sued upon, Julie Green was acting in the course and scope of her employment with Tonti Realty Corporation. Tonti responded that the two statements of fact were admitted.
During the second trial of this matter, plaintiff filed a memorandum in support of proposed supplemental jury instructions and interrogatories. In this pleading, plaintiff contended that based on defendant’s responses to the request for admission, the issue of course and scope of employment had been judicially admitted and should not be submitted to the jury. Defendant did not file a responsive pleading. Further, during the trial of trial of this matter, counsel for plaintiff introduced into evidence the requests for admission and defendant’s responses thereto. This evidence was admitted without objection of defense counsel.
At trial, the parties presented the testimony of several fact witnesses who testified to what they observed on the date of the incident. Plaintiff presented the testimony of Eric Cook, a temporary employee who was working at the Sunlake Apartments on the date of this incident. Mr. Cook stated he was standing near the break room waiting for Ms. Green to open the door, and he saw Ms. Green coming down the street in a golf cart toward the break room. He stated that she then veered the golf cart in the direction of Mr. Payne who was across the street between two parked cars, and she struck Mr. Payne with the cart. The witness stated Ms. Green did not apply |Kthe brakes or stop the golf cart, although he stated that she had plenty of time and space to avoid the collision. He also stated that when she stopped the golf cart at the break room, she stated “I don’t stop for anybody.”
James Payne also testified at trial that at the time of this accident, he had been employed by Tonti for 27 years. He stated that he did not have any problems with Julie Green before this accident. He stated that on the date of this incident, he was crossing a street within the apartment complex and was walking between two parked cars. He saw Ms. Green coming down the street in the golf cart, and he noticed that she veered the cart in his direction. He tried to back up to avoid being hit, but he was unsuccessful. Mr. Payne stated that after the cart hit him, he heard Ms. Green say, “I don’t stop for anybody.” Mr. Payne stated he was not engaged in horseplay at the time of the accident, and he was not trying to jump on the cart. He stated that it appeared to him that Ms. Green struck him intentionally-
Defendant presented the testimony of Julie Green. Ms. Green testified at trial that she was a manager for Tonti Realty Corporation. She stated that on the day of the incident, she was driving a golf cart to the break room on the premises to open it for the employees. As she drove down the street toward the break room, she noticed Mr. Payne coming out from between two parked cars. She stated that he took a few steps forward, then a few steps back and then forward again. She stated she assumed he would stop walking to avoid a collision with the golf cart, and *1094 when she realized he wasn’t going to stop, it was too late to stop the cart to avoid the collision. Ms. Green denied striking Mr. Payne intentionally, and she denied making a statement after the accident that she wasn’t going to stop for anyone. She stated that after the accident, she asked Mr. Payne if he was hurt and she notified her employer of the accident and the possible injury to Mr. Payne.
|fiFollowing the presentation of all of the evidence, the trial court reviewed the proposed jury charges with counsel for plaintiff and defendant. At this time, defendant objected to the changes in the jury charges which were given at the first trial. Specifically, defendant objected to the trial court’s exclusion of a charge given to the jury in the first trial regarding respondeat superior. Defense counsel’s objection was as follows:
You’ve omitted in your former charge the entire section entitled, “Respondeat Superior” which is pages 9 and 10 in your former jury charge. And the defendant objects.
Plaintiffs argument is simply because the defendant has stipulated that Ms. Green was in the course and scope of her employment at the time of the accident that that necessarily means that if Julie Green is found to have committed an intentional tort, Tonti is automatically as a matter of law responsible. That is in fact not the law of Louisiana.
The trial court, in denying the objection to the jury charge, stated as follows:
Course and scope has been stipulated to by counsel; it’s in his admissions. So, that’s why I left that out.
The jury was then charged by the trial court, and the jury returned a verdict in favor of plaintiff and against defendant. The jury interrogatories and responses regarding defendant’s liability were as follows:
Did defendant Julie Green commit a battery, intentional tort upon plaintiff, James Payne? Yes.
Do you find that the plaintiff James Payne sustained any injury as a result of this incident? Yes.
Appellant contends that the trial court erred in excluding from the jury charges a statement of the law of respondeat superi- or. We find that this contention has merit.
Generally, an employee’s exclusive remedy against his employer for on-the-job injury is workers’ compensation. An exception is made for 17intentional torts. La. R.S. 23:1032. An employer may be vicariously liable for the intentional acts of its employees. La. C.C. art. 2320; Craft v. Wal-Mart Stores, Inc., 01-564 (La.App. 3 Cir. 10/31/01), 799 So.2d 1211, writ denied, 02-132 (La.3/22/02), 811 So.2d 933.
In Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996, the Supreme Court relied on La. C.C. art. 2320, and further stated:
In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the “tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer’s business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer’s interest.” Barto v. Franchise Enterprises, Inc., 588 So.2d 1353, 1356 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (1992) (quoting LeBrane v. Lewis, 292 So.2d 216, 217, 218 (La.1974)).
Thus, in an analysis of vicarious liability for an employee’s tortious actions, the court must consider more than simply *1095 whether the employee was in the course and scope of employment at the time of the incident. An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer’s objective. Baumeister v. Plunkett, supra, 673 So.2d at 996.
In determining whether vicarious liability applies, the court in Baumeister relied on the decision of LeBrane v. Lewis, 292 So.2d 216 (La.1974), which considered the following factors in holding an employer liable for a supervisor’s actions in stabbing his fellow employee:
(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee’s duties;
|a(3) whether the act occurred on the employer’s premises; and
(4) whether it occurred during the hours of employment.
292 So.2d at 218.
The court in LeBrane found that these four considerations had been met, and thus the employer was liable in tort to third persons injured by the employee’s actions. However, in Baumeister, the court applied these four factors and determined that an employer was not vicariously liable for an act of sexual battery by one employee against another.
In the present case, the trial court considered the holdings of LeBrane and Bau-meister, yet concluded that defendant’s responses to the requests for admissions propounded by plaintiff amounted to a stipulation that the employer was vicariously liable for Ms. Green’s actions. However, the admissions contained in the record only state that Julie Green was acting in the course and scope of her employment on the date of the incident. There is no admission of the first two factors set forth by LeBrane, i.e., that Ms. Green’s act was primarily employment rooted or that the act was reasonably incidental to the performance of the employee’s duties. Louisiana law holds that an employer is not vicariously liable merely because his employee commits an intentional tort on the employer’s premises during working hours. As such, the admissions in the record regarding course and scope of employment are insufficient to determine as a matter of law that Tonti was vicariously liable for the acts of Ms. Green on the date of the incident.
By holding that the parties had stipulated to the factors in LeBrane and that vicarious liable was not an issue to be resolved by the jury, the trial court erred. Further, the trial court erred in failing to give the requested charge to the jury on the issue of vicarious liability and respon-deat superior. Based on this error, the jury was unable to make a determination based on [¡^applicable Louisiana law as to whether Tonti could be held vicariously liable for the acts of Ms. Green.
This Court has previously held that:
Adequate jury instructions are those which fairly and reasonably present the issues and which provide correct principles of law for the jury to apply to those issues. In making charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case.
[A]n appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial.
*1096 The pertinent question involved in deciding whether reversible error has occurred is whether the jury was misled to such an extent as to prevent it from doing justice.
Goodman v. Allstate Ins. Co., 98-732 (La.App. 5 Cir. 5/19/99), 736 So.2d 310, 312.
The jury in this case considered the testimony and evidence presented regarding whether Julie Green acted intentionally when she struck the plaintiff with the golf cart. The jury resolved the conflict in testimony in plaintiffs favor and determined that the act was intentional. However, because of the trial court’s erroneous jury charge, the jury was unable to determine whether Tonti could properly be held vicariously liable for this intentional act. Further, there was no evidence presented in this case regarding whether Ms. Green’s act was employment rooted or whether it was reasonably incidental to the performance of her duties with Tonti.
We find the case of Ventola v. Hall, 03-703 (La.App. 5 Cir.2003), 861 So.2d 677, 681 to be instructive. In that case, a default judgment in favor of plaintiff was vacated based on a lack of prima facie evidence that a trucking company was vicariously liable for the actions of its employee, Hall, in punching a motorist in the face. A panel of this Court stated:
hnAlthough Hall, in his affidavit, states that he was in the course and scope of his employment, he does not explain how his actions in exiting his truck and punching a motorist in the face was employment rooted, or incidental to his job. Furthermore, striking an unrelated motorist in the face while stopped in traffic cannot be regarded as a risk of harm fairly attributable to the employer’s business. Accordingly, we find that the trial court was manifestly erroneous in finding that plaintiff presented a prima facie showing that driver’s actions were in the course and scope of his employment so as to hold company liable for his actions.
Under the circumstances presented in this case, we conclude that the failure of the jury to receive an instruction on the law regarding vicarious liability substantially affected the outcome of this case. The lack of an instruction as to this element of proof must be presumed to have influenced the jury in its determination of employer fault. We find that the error of the trial court was prejudicial in that the jury was misled into a belief that all of the elements of vicarious liability had been admitted by defendant or stipulated to by the parties.
However, although we conclude that the trial court’s failure to include a charge on respondeat superior constitutes reversible error, we fail to find that a new trial is required in this case. If the verdict or judgment is clearly contrary to the law and the evidence, we can make that determination on this appeal and grant relief, without having to order a new trial, because the complete record is before us. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Summit v. Trosclair, 270 So.2d 921 (La.App. 4th Cir.1972). Thus, we reverse the jury verdict and undertake a de novo review of the record. Carmen v. Gonzalez, 93-2418 (La.App. 4 Cir. 5/17/94), 637 So.2d 1108, 1111; Guilfore v. D.H. Holmes Co., Ltd., 93-76 (La.App. 4 Cir. 1/13/94), 631 So.2d 491, 498.
In As we stated previously herein, the record contains conflicting testimony as to whether Ms. Green’s act of striking plaintiff with the golf cart was accidental or intentional. Ms. Green testified it was an accident, while Mr. Payne and another witness stated that it appeared from her actions that Ms. Green’s actions were in *1097 tentional. Our independent de novo review of the record confirms the conclusion of the jury that Ms. Green’s actions were intentional.
However, the record before us is completely devoid of any evidence of whether this act was employment rooted or incidental to the performance of the employer’s duties as required to support a finding of vicarious liability on the part of the employer. LeBrane, supra; Baumeister, supra. In contrast to those cases where an employer has been found vicariously liable for the intentional tort of one employee against another, we cannot say that the root cause of the contact between Green and Payne was employment related or that Green’s contact with Payne was “within the ambit of her assigned duties and in furtherance of her employer’s objective.” Baumeister, supra, 673 So.2d at 996; Craft v. Wal-Mart Stores, Inc., supra, 799 So.2d at 1215. Absent any type of evidence in the record which would support such a finding, we find that plaintiff failed to meet his burden of proving that Tonti Realty Corporation is vicariously liable for the intentional acts of its employee, Julie Green.
Thus, after a complete and independent review of the entire record, including the testimony and exhibits, as well as all applicable law, we conclude that Tonti Realty Corporation is not vicariously liable for the intentional acts of its employee, Julie Green based on a theory of respondeat superior.
| igRemaining Assignments of Error
Tonti raises several other issues on appeal with regard to evidence of workers’ compensation payments and excessive damages. However, based on our holding herein reversing the verdict of the jury, we find it unnecessary to reach the merits of those arguments. In light of our holding herein, Tonti’s remaining assignments of error are pretermitted.

Conclusion

Accordingly, the jury verdict rendered in favor of plaintiff James R. Payne, Sr. and against Tonti Realty Corporation is reversed. Based on the reasons set forth in this opinion, we render judgment dismissing plaintiffs case against Tonti Realty Corporation with prejudice.

REVERSED AND RENDERED.